## ·BECKER v. ASHLEY.
### No. 1225.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1933.

Rownd & Warner, of Hammond, and Ponder & Ponder, of Amite, for appellant.

St. Clair Adams, Jr., of New Orleans, and Reid & Reid, of Hammond, for appellee.

LE BLANC, Judge.

The defendant, L. P. Ashley, has filed a motion to dismiss the appeal in this suit on the ground that there was no order of appeal granted by the district judge.

The suit is one for damages arising out of an automobile accident in which plaintiff's husband was seriously injured and died two days thereafter. The defendant in answering, filed a reconventional demand for the injuries he had sustained in the accident. The judgment of the lower court dismissed both plaintiff's demand and the defendant's reconventional demand. In the transcript as originally prepared for this court, the extract of the minutes of court show that on motion of L. P. Ashley, defendant, through his attorneys, a devolutive appeal was granted, returnable to this court, and bond fixed in the sum of $100. The order, as it reads, was granted on April 13, 1932, and the return day was fixed on or before December 3, 1932. On November 22, 1932, within the return period, an appeal bond for the amount fixed in the order was filed by the plaintiff, Mamie Becker.

On the day that the case was fixed for argument in this court, June 28, 1933, the same day on which the motion to dismiss the appeal was filed, plaintiff filed a corrected copy of the original minutes of court; the deputy clerk certifying that the copy as appearing in the record was in error in respect to the order of appeal. The corrected copy shows that the motion for the appeal was made on behalf of plaintiff, Mamie Becker, and that it was granted to her upon her furnishing bond in the sum of $100, returnable to this court on or before December 3, 1932. We have no doubt about the error as certified to by the deputy clerk of court. The appeal bond filed by the plaintiff, the proper party, appellant furnishes further proof that the order of appeal was granted to her and not to the defendant who took no steps, as indeed he had no interest in taking, to perfect the appeal. We think that the corrected copy of the minutes reflects the true situation. Were we disposed to act on the motion to dismiss in any manner favorable to the defendant, it would be to remand the case to the lower court for the purpose of further ascertaining the exact situation with regard to the order of court. We do not think that is a necessary proceeding, in view of the showing made. This showing in our opinion is sufficient to sustain the appeal, and the motion to dismiss is therefore overruled.

The plaintiff's claim is for the sum of $15,500, made up of several items. In a supplemental petition she alleges that she is further entitled to the sum of $250 for burial expenses of her deceased husband, but the prayer of this petition fails to ask for judgment in that sum. The basis of her demand for damages against the defendant is that he ran into her husband's automobile because he was driving his car while he was in an intoxicated condition. The defendant denies that he was intoxicated, and places the blame on the plaintiff's husband, who, he avers, was afflicted with some sort of sleeping sickness, and fell asleep at the wheel of his automobile.

The accident happened during the night of May 6, 1931, on highway route 51, about a mile and a half north of Hammond, in Tangipahoa parish. The plaintiff's deceased husband was returning from New Orleans to his home in Independence, and the defendant was on his way back to Hammond from Independence where he had attended a district as-

sociation meeting of cleaners and pressers; that being the business he was engaged in at Hammond. In the car with the deceased husband of plaintiff was a negro boy named James Wade. Defendant was alone in his automobile. These two were the only remaining eyewitnesses to the actual collision. Two darkies, said to be negro preachers, testify that they were on the highway, on foot, at the scene of the accident, saw the Becker car as it approached the place of impact, heard the noise, but did not actually see it.

The negro boy Wade says that Becker was driving on his right-hand side of the road, that is, on the east side, and that Ashley swerved from his side on the west and ran into them. Ashley's version of course is entirely different. He says that when he first saw the Becker car, it was passing ahead of a truck. It then got on the east side of the road, which was the proper side for it to be on, but when he was almost ready to meet it, it swerved quickly to the left. He says that he was then driving about 35 or 40 miles an hour, and that he immediately slammed his brakes and pulled to the right, but the wreck happened just the same.

The two negro preachers were walking toward Hammond, and both testify that the Becker car was zigzagging as it came toward them; but strange to say neither says anything about having seen it pass ahead of another automobile or truck. The testimony of these two witnesses is not of much value, and as that of the only two surviving occupants of the cars is so conflicting, we are compelled to consider the physical facts and circumstances in an effort to solve the issue of negligence.

Several witnesses testify to having seen oil and broken glass scattered over the roadway at the scene of the accident. None of them seemed to be able to state positively whether the spots of oil or the broken fragments of glass indicated that the impact took place on one side of the road or the other. Besides, when they made their observations the cars had already been removed on the roadway so as to clear the same for traffic. All of this testimony is therefore of little assistance in determining the important point as to which side of the road the cars were on when the collision took place. Two witnesses for defendant, one named Roberts and the other Cox, claim to have arrived at the scene of the accident shortly after it occurred, and, as we understand them to say, before the cars had been moved. Roberts' testimony is to the effect that the defendant's car was on the right-hand side of the road going south, about two feet from the stripe in the middle of the pavement, headed somewhat southeast, and that the Becker car was facing toward the west almost across the pavement. He says that there was a space of four or five feet between the two cars. Mr. Cox seemed to have

been more interested in rendering assistance to the injured parties than in observing the position of the cars. From what he did notice, however, the defendant's car was on an angle at its right-hand side of the road, perhaps four or five feet from the center of the road, and the Becker car was on its side of the road, but very close to the center line, if it did not in fact cross that line. Whatever may be said as to all the testimony on this point, certainly the preponderance is not on the side of the plaintiff, and if there is any advantage at all, it seems to be with the defendant.

A mass of testimony was submitted on the question as to whether Ashley, the defendant, was drunk or not at the time of the accident, and therefore unable to control his car. The testimony ranges all the way from a state of almost complete intoxication during the afternoon to one of entire sobriety when he left the meeting which he had been attending and started on his way back home. The testimony that he was drunk that afternoon is for the most part exaggerated, and most of it is impeached and discredited. Ashley himself does not deny that he indulges in whisky drinking, and did take a couple of drinks during the afternoon. He and other parties had bought a few gallons of whisky, and the drinks he took were to sample what he was buying. He took a half pint of this whisky with him to the meeting. The testimony shows that there was only one other half pint consumed, besides his, by the seventeen or eighteen men who were present. He says that he remembers having had one drink from his half pint, and admits sipping a glass of strawberry wine which was served with the spaghetti supper, all of which was not near enough to make him feel the least bit intoxicated.

He addressed the meeting which was held after the supper, in his capacity as president of the association, and every one present who testified in the case says that his speech was perfectly rational, and there was nothing to indicate that he was intoxicated. The testimony as a whole satisfies us that he was not.

On the other hand, the testimony on which defendant relies to show that plaintiff's husband had fallen asleep and lost control of his car is not any more convincing. There is evidence to the effect that the deceased was in the habit of falling asleep at times when normal people would not be expected to do so, but none whatever to show that he had ever gone to sleep while driving his automobile, and certainly none that he was asleep when the accident occurred.

■ The testimony on every point in the case is disputed and the record almost teems with contradictions which make it impossible to fix the blame for the accident on one party or the other. The accepted rule of law in such cases is that both parties remain in the

same situation as they were before the accident took place. The judgment of the lower court properly rejected both the demand of the plaintiff and the defendant's reconventional demand.

Counsel for plaintiff complains of a ruling by the trial judge which denied his client a new trial. The motion for a new trial was based on newly discovered evidence. We have carefully gone over the averments of her motion in which the plaintiff gives a résumé of what that evidence would be if it could be introduced in the record. Some of it is on the question of the defendant's intoxication, some of it relates to physical facts, and some of it would amount to impeaching the testimony of some of the defendant's witnesses. All of it, however, seems to be of the same nature and character as the testimony herein discussed, and would add little if anything at all of value in solving the true issues in the case. The granting of a motion for a new trial is a matter which addresses itself largely to the discretion of the trial judge, and in this case we are not prepared to say that the judge has abused his discretion in overruling the motion.

Judgment affirmed.