336 So.2d 990 (1976)
Daniel DIEUDONNE, Plaintiff-Appellant,
v.
Gerald GUIDRY and Southern Pacific Transport Co. of Texas and Louisiana, Defendants-Appellees.
No. 5560.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1976.
Rehearing Denied September 20, 1976.
Writ Refused December 3, 1976.
*991 Borne & Rogers by Allen J. Borne, Franklin, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe by J. J. Davidson, III, Lafayette, for defendant-appellee.
Caffery, Duhe & Davis by J. Louis Gibbens, New Iberia, for intervenor-appellee.
Before DOMENGEAUX, GUIDRY and BERTRAND, JJ.
BERTRAND, Judge.
Daniel Dieudonne brought suit against Gerald Guidry and his employer, Southern Pacific Transport Company of Texas and Louisiana, for damages sustained as the result of an accident which occurred near the "T" intersection of Louisiana Highway 85 and U.S. Highway 90 in Jeanerette, Louisiana.
The jury, by special verdict, found that Guidry was guilty of negligence which was a proximate cause of the accident and that Dieudonne was either guilty of negligence or that he had that the last clear chance to avoid the accident. The effect of the jury's findings was to deny recovery to Dieudonne.
Dieudonne thereafter applied for a new trial, alleging that new evidence had been discovered and that a juror had made an unauthorized visit to the scene of the accident. The trial judge denied his motion and refused to consider the affidavits of certain jurors in arriving at his decision.
Dieudonne has based this appeal on two issues:
(1) Whether the findings of the jury were erroneous, and
(2) Whether the trial court erred in denying plaintiff's motion for a new trial.

I JURY VERDICT
On October 11, 1973, at approximately 11:00 A.M., Guidry was driving his truck in a northerly direction on Louisiana Highway 85 and was approaching U.S. Highway 90. Dieudonne was travelling toward Louisiana Highway 85, in an easterly direction on U.S. 90, the favored road. As Guidry reached the intersection, he brought his truck to a complete stop, looked to his left, the direction from which Dieudonne was approaching, saw nothing, then looked to his right and proceeded forward onto the highway in order to make a left turn. As he was pulling forward, he looked again to his left and saw Dieudonne approaching. Guidry brought his truck to an immediate stop approximately three (3) to seven and a half *992 (7½) feet from the center line. Dieudonne swerved around Guidry, veered to the left, ran over a mountable curb and into some gravel, where he lost control and ran onto the roots of a large oak tree.
A jury's findings of fact should be affirmed unless characterized by manifest error, and should not be upset except in the most compelling and clearest case of error. Hooper v. Wilkinson, 252 So.2d 137 (La.App. 3rd Cir. 1971); Iverson v. Jahncke Services, Inc., 301 So.2d 886 (La.App. 4th Cir. 1974); Ashley v. Nissan Motor Corp. in U.S.A., 321 So.2d 868 (La.App. 1st Cir. 1975), writ refused. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring, 283 So.2d 716 (La.1973); Bertrand v. Aetna Casualty and Surety Co., 306 So.2d 343 (La.App. 3rd Cir. 1975), writ refused.
At trial, Dieudonne stated that he did not try to go around Guidry because a yellow Pinto was coming from the opposite direction. However, Guidry and the only other witnesses to the accident, Harry John Lewis, Jr. and Johnny Dubois, testified that they did not see another car coming from the opposite direction.
Dieudonne testified that he was travelling about 30 to 35 miles per hour. The speed limit for that portion of U.S. 90 is 35 miles per hour. Henry John Lewis, Jr., first testified that Dieudonne appeared to be going 35 miles per hour or a little better. However, a prior statement made by him was to the effect that Dieudonne was travelling about 50 to 60 miles per hour. Upon being confronted with this statement, he changed his assessment of Dieudonne's speed to, "40, 45, 50, something like that." Guidry estimated Dieudonne's speed to be 40 or 45 miles per hour. It should be noted that Dieudonne testified that at the time of the accident he was running late in his deliveries.
Guidry testified that when he stopped and first looked to the left, the telephone pole was the only object which could have obstructed his view. He eased his truck past the pole in order to get a better view, and did not see any traffic coming from his left. Guidry's cab had no nose, and the windows were large, thereby affording him excellent visibility.
Dwayne T. Evans, a consulting traffic engineer, considered several hypotheses at trial. He stated that if Dieudonne had seen Guidry from 175 to 200 feet away and was travelling 35 miles per hour, he could have brought his truck to a complete stop before reaching Guidry. If Dieudonne had observed Guidry from 200 feet, travelling 35 miles per hour, he could have brought his vehicle to a stop 100 feet before reaching the intersection. He could not have stopped his car in time if he was travelling 35 miles per hour and first observed Guidry when he was 10 to 20 feet away. If Dieudonne had only realized the danger at the time he reached the intersection and had reacted while travelling at 35 miles per hour, he could have avoided collision with the tree, which was 130 to 135 feet past the intersection. If he was travelling 35 miles per hour and had started braking before he hit the mountable curb, even taking into consideration that he ran upon a graveled area, Dieudonne should not have lost control of his truck. However, if his speed was 45 to 55 miles per hour he would have lost control when he hit the mountable curb.
Clay Penn, the investigating officer, testified that Guidry told him that it was lucky that no car was coming in the other direction. He testified that the heavy damage sustained by the Dieudonne truck was evidence of excessive speed.
The record in the case contains sufficient evidence to warrant a finding of negligence on the part of the plaintiff. From the evidence adduced, the jury could properly find that the plaintiff was operating his vehicle at an excessive speed, without keeping a proper lookout and without having his vehicle under proper control.
*993 The evidence also supports a finding that the plaintiff had the last clear chance to avoid the accident.

II APPLICATION FOR NEW TRIAL
A. IMPROPER JURY CONDUCT
The trial court committed no error in its denial of a new trial based on alleged jury misconduct. During the course of the trial the foreman of the jury visited the scene of the accident. The plaintiff argues that this constituted improper jury conduct which entitles him to a new trial.
Absent court instructions to the contrary there is no reversible error when a juror visits the scene of the accident unless this visit is brought about by improper motives, particularly where the rights of the parties are not prejudiced. Youngblood v. Allstate Insurance Company, 98 So.2d 570 (La.App. 2nd Cir. 1957), reversed on other grounds, 239 La. 338, 118 So.2d 431 (1960). During the trial the jurors were shown large photos of the scene of the accident. These photos were introduced into evidence by both the plaintiff and defendants. A visit to the actual scene of the accident could not have prejudiced the rights of either party unless the juror performed experiments to supply new evidence. This did not occur. We have previously ruled that it was not improper for a trial judge to visit the scene of the accident without the presence of counsel where the visit supplied no new evidence. Maturin v. Dronet, 288 So.2d 690 (La.App. 3rd Cir. 1974).
The plaintiff contends that the trial court committed error in refusing to admit the affidavits of certain jurors into evidence. We find no merit to this argument. Affidavits or testimony of jurors to impeach their own verdict on grounds of misconduct on the part of the affiant or his fellow jurors are inadmissible to set aside a jury verdict. Renz v. Texas and Pacific Railway Company, 138 So.2d 114 (La.App. 3rd Cir. 1962), cert, denied, and the cases therein cited. Applying the rule announced in Renz, we feel that the trial court was correct in refusing to consider the affidavits in question.
B. NEWLY DISCOVERED EVIDENCE
The plaintiff's final contention is that the trial judge erred in denying his application for a new trial because he had discovered new evidence. The new evidence consisted of testimony by a Mrs. Landry that on the day of the accident the plaintiff stated to her that an oncoming yellow Pinto prevented him from going around Guidry. This testimony is corroborative and, therefore, cumulative. The trial court properly refused a new trial based on this alleged testimony. Becker v. Ashley, 150 So. 74 (La.App. 1st Cir. 1933); Chauvin v. Chauvin, 297 So.2d 234 (La.App. 3rd Cir. 1974).
For the reasons assigned, the judgments appealed from are affirmed at appellant's cost.
AFFIRMED.