357 So.2d 1277 (1978)
Frank LACHNEY, Plaintiff-Appellee,
v.
MOTOR PARTS AND BEARING SUPPLY, INC., et al., Defendants-Appellants.
No. 6394.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1978.
*1278 Gold, Little, Simon, Weems & Bruser, Edward E. Rundell, Alexandria, for defendants-appellants.
Donald R. Wilson, Ben C. Bennett, Jr., Marksville, for plaintiff-appellee.
Gist, Methvin & Trimble, DeWitt T. Methvin, Jr., Stafford, Randow, O'Neal & Smith by Hodge O'Neal, III, Alexandria, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
DOMENGEAUX, Judge.
This is a products liability suit brought against the manufacturer and vendor of an allegedly defective wire cable.
Plaintiff, Frank Lachney, was engaged in the cutting and hauling of pulpwood for the River Timber Company. He operated his own rig, which consisted of a double bed truck and a winch mechanism of the type customarily used in this trade.
The winch mechanism, which was located at approximately the center of the bed of the truck, consisted of a spool, mast, and adjustable boom. A 5/16th inch wire cable was stored on the spool. It travelled up the mast to the boom, where it went around a pulley; it then travelled along to the end of the boom, where it went through another pulley; and finally was free. Attached to its free end was a grabbing mechanism or set of tongs, which was used to pick up the pulpwood logs. The boom was manually adjusted by using a metal chain attached to its end. It was capable of being rotated a full 360 degrees and elevated to an angle of from 90 degrees to 180 degrees.
The cable itself was raised and lowered by means of a hydraulic brake system attached to the spool and operated by a lever in the rear of the truck. When the brake was applied, the spool rotated in such a fashion as to pull the cable, and the tongs and their load were raised. When the brake was not applied, the spool was free to rotate in the opposite direction, and the tongs and their load fell to the ground due to gravitational forces. By varying the *1279 amount of pressure applied to the brake, the tongs and their load could be kept in an approximately stable state in mid air.
The facts giving rise to the instant controversy arose when, on January 24, 1976, a cable manufactured by Bridon-American Corporation and sold to plaintiff by Motor Parts and Bearing Supply, Inc. on January 10, 1976, broke while being used by plaintiff to load pulpwood logs onto his truck.
At the time of the accident the front section of plaintiff's truck had been completely loaded with pulpwood logs. The rear section was nearing capacity. The tongs were already attached to a log, and plaintiff was standing on the truck, guiding the log. Plaintiff's minor son, Dale, was operating the brake lever at the rear of the truck. When the log was almost finished being lifted, the entire boom mechanism, tongs, and log swung from the passenger side of the truck to the driver's side. This apparently was caused by the fact that the truck was leaning to the driver's side because of the logs already loaded. Plaintiff jerked on the adjusting chain attached to the boom in order to bring it and the log back into place on the passenger's side. At this point the wire cable holding the log broke. Although plaintiff was not struck by any object the repercussion of the force caused plaintiff to fall. His shoulders hit the tailgate of a nearby pickup truck, and he was knocked unconscious.
As a result of the ensuing injuries, plaintiff was unable to work and collected workmen's compensation benefits from American Mutual Insurance Company, the compensation insurer of River Timber Company.[1]
Lachney filed this action on September 16, 1976, against the manufacturer of the wire cable, Bridon-American Corporation; its insurer, Travelers Insurance Company; the vendor of the wire cable, Motor Parts and Bearing Supply, Inc.; and its insurer, United States Fidelity and Guaranty Insurance Company. The workmen's compensation insurer, American Mutual, intervened on September 20, 1976, for reimbursement of compensation benefits being paid.
Trial was held before a jury. After a lengthy presentation of evidence, which took several days, the jury made the following special findings of fact:
"1Do you find there was any fault or negligence on the part of Motor Parts and Bearing Supply, Inc., (the retail dealer) in its sale of the cable that is the subject of this lawsuit? (Answer yes or no) No
2Do you find there was a defect in the cable that is the subject of this lawsuit in its make up or manufacture, when it left the factory that made it? (Answer yes or no) Yes
3Do you find there was fault or negligence on the part of Bridon-American Corporation (the manufacturer) in the making or manufacture of the cable that is the subject of this lawsuit? (Answer yes or no) Yes
4Do you find that Frank Lachney was guilty of fault or negligence which caused or contributed to the accident which forms the basis of this suit? (Answer yes or no) No"
Accordingly, the jury held in favor of plaintiff and against Bridon-American and assessed damages in the sum of $100,436.60, and also held in favor of the intervenor, American Mutual, for the sum of $9,463.60, to be paid by preference and priority out of the sum awarded to plaintiff. The intervenor was also relieved from paying further compensation benefits to the extent of the excess amount awarded to plaintiff above that amount to which the intervenor was entitled to reimbursement by preference and priority, the sum to be discounted at the rate of six percent per annum, in accordance with La.R.S. 23:1103. The demands of plaintiff against Motor Parts and Bearings Supply were dismissed.
Bridon-American and its insurer filed a suspensive appeal; plaintiff filed a devolutive appeal. Additionally, answers were filed by plaintiff, American Mutual, Motor *1280 Parts and Bearing Supply, Inc., and its insurer, United States Fidelity & Guaranty Company. Bridon-American contends on appeal that the jury was in error by finding the cable defective at the time it left the manufacturer and in finding fault or negligence on its part. Plaintiff contends on appeal that the jury award is insufficient and should be increased, that the reimbursement awarded to American Mutual should not be deducted from the amount of plaintiff's award, and that workmen's compensation benefits should be continued without regard to his judgment against Bridon-American. American Mutual, the intervenor, contends in its answer and brief that its award of reimbursement was erroneous because it did not bear legal interest from the date of judicial demand and because it did not protect American Mutual's rights to go against the third party tort-feasor, Bridon-American, for the full amount of compensation benefits it may become obligated to pay in the future, above and beyond the total amount awarded to plaintiff. Motor Parts and Bearing Supply, Inc. filed its answer and brief simply to protect its interests on appeal.

I. THE CONTENTIONS OF DEFENDANT, BRIDON-AMERICAN CORPORATION.
At the outset we feel it necessary to reiterate the basis for Bridon-American's liability. The fountainhead case in Louisiana governing products liability is Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971). The oft-quoted pronouncement dealing with a manufacturer's liability is stated at 250 So.2d at page 755 of the opinion:
"A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i. e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect."
The burden of proof necessary for an injured party to prevail was explained at 250 So.2d at page 756:
"If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for the manufacturer is presumed to know of the vices in the things he makes, whether or not he has actual knowledge of them."
And further, 250 So.2d at page 757:
"[T]he plaintiffs' burden is to prove causation by a preponderance of the evidence. This burden may be met either by direct or, . . . by circumstantial evidence. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971); Naquin v. Marquette Cas. Co., 244 La. 569, 153 So.2d 395 (1963).
As we stated in the latter decision, 153 So.2d 397: `Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to the causally active, would break the chain of causation.'"
The defendant manufacturer does not dispute the above principles of law. It also does not raise an issue concerning causation or injury. Bridon-American specifies error only in the jury's finding of fact that the cable was defective at the time it left the manufacturer and that the manufacturer was thereby negligent. It claims that the evidence does not support this conclusion.
Before examining the evidence in this case, we note that under the rule of Canter v. Koehring Company, 283 So.2d 716 (La.1973), a reviewing court must give great weight to factual conclusions drawn by the trier of fact. As we stated in Dieudonne *1281 v. Guidry, 336 So.2d 990 (La.App. 3rd Cir. 1976), writ denied 339 So.2d 853 (La. 1976):
"A jury's findings of fact should be affirmed unless characterized by manifest error, and should not be upset except in the most compelling and clearest case of error. Hooper v. Wilkinson, 252 So.2d 137 (La.App. 3rd Cir. 1971); Iverson v. Jahncke Services, Inc., 301 So.2d 886 (La. App. 4th Cir. 1974); Ashley v. Nissan Motor Corp. in U.S.A., 321 So.2d 868 (La. App. 1st Cir. 1975), writ refused. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring, 283 So.2d 716 (La. 1973); Bertrand v. Aetna Casualty and Surety Co., 306 So.2d 343 (La.App. 3rd Cir. 1975), writ refused."
Looking to the record in this case, it was established at trial that the cable in question was a 5/16th inch fiber core, steel cable, with a breaking strength of 4.26 tons. The recommended working load of the rope was approximately 1700 lbs. Plaintiff established that the cable had only been recently installed on his rig and that it had shown no signs of wear, that would have indicated replacement was necessary. Although the specific log being lifted at the time of the accident was not offered into evidence, it was established that it was from a hackberry tree, and it was estimated to weigh about 800 lbs., having dimensions of approximately 20 to 23 inches in diameter by 5 to 5½ feet long.
Plaintiff's expert metallurgist, Mr. Steven Teleshak, who examined the broken section of the cable, testified that the wires in the rope were simply pulled apart. He stated that the majority of wires examined exhibited what is known as "tensile" or "cup and cone" fractures, which is indicative of breakage due to overload. This testimony, in combination with other facts offered into evidence, could have given rise to the inference that if the rope in question was supposed to have a breaking strength of over 8,000 lbs. and a working strength of over 1,700 lbs., and, if the rope broke with a load of only 800 lbs., the rope must have been defective. When this is coupled with Teleshak's testimony that there was no evidence of abuse or damage by the vendor and no evidence of excessive wear by the plaintiff, it seems apparent that the cable must have been defective when it left the manufacturer.
In order to rebut the inference that the rope was defective, Bridon-American offered the testimony of three experts: Charles Layton, Courtney Busch, and Harold Meyers.
Layton was accepted as an expert in wire ropes. He was employed by Bridon-American and was in charge of quality control at its plants at the time of the trial. He testified that each and every spool of rope manufactured by the company is tested and that a quality control test was run on the master reel from which this rope was derived. The test indicated that it was free from defects. However, the probative value of this evidence was decreased when it was discovered on cross-examination that the test was run on only a five foot section of the 10,000 foot master reel. As explanation for the rope breaking with such a light load, Layton stated that Lachney must have jammed the tongs into the pulley at the time of breakage while continuing to apply force to the cable. He explained that the tension applied to the rope from continuing to apply force after the tongs were jammed apparently would have reached such a magnitude that the rope's breaking strength was exceeded.
This hypothesis, attempting to explain breakage with such a light load, was the same as that offered by the manufacturer's other two experts, Busch and Meyers. Both of these agreed with Layton that the rope broke because it was overloaded. Busch and Meyers stated that the tongs and the knot securing the cable to the tongs were jammed into the pulley with enough force to exceed the rope's capacity and that this was the reason for breakage.
*1282 The hypothesis of the defense, however, was directly refuted by the testimony of Lachney, who candidly admitted that on occasion he had jammed the tongs into the pulley, but who also was emphatic that this had not occurred at the time of the accident. His testimony was supported by the testimony of his son, Dale, which was to the same effect. Both Lachney and his son were the only eye witnesses to the accident.
We feel that there is a reasonable evidentiary basis for the jury's conclusion that the cable manufactured by Bridon-American was defective, and we will not disturb this conclusion on appeal. The jury simply chose to believe plaintiff's version of the accident rather than that of the defendant, and this it was entitled to do. Thus, we affirm the jury's verdict finding Bridon-American liable for plaintiff's injuries.

II. THE CONTENTIONS OF PLAINTIFF, FRANK LACHNEY.
Plaintiff raises three contentions on appeal, viz.: (1) the jury's award of $100,436.60 was inadequate to cover plaintiff's injuries; (2) the amount of the workmen's compensation insurer's reimbursal should not come out of plaintiff's tort award; and (3) workmen's compensation benefits should be continued without regard to plaintiff's recovery against the third party tort-feasor.
With regard to quantum, the medical evidence presented at trial revealed that plaintiff suffered both physical and mental injuries as a result of the accident. Plaintiff's somatic injuries consisted of compression fractures of the T-5 and T-12 vertebrae of approximately fifty percent magnitude. This means that these vertebrae are about half of their former length. As a result, plaintiff may suffer increased curvature of the spine. He may also become hunchbacked, have a slightly forward stoop, and could lose some height. Furthermore, since other areas of the back may have to make overcompensatory movements, more stress will be placed on adjacent vertebrae, and this will result in earlier degenerative changes, including degenerative arthritis. It was also clear from the evidence that a compression fracture can be very painful and that plaintiff cannot return to doing the type of work he did before the accident. However, medical testimony indicated that plaintiff may be able to return to some form of gainful activity with the passage of time.
Doctor Charles Laurent, a psychiatrist, testified as to plaintiff's mental problems. He stated that plaintiff sustained a marked psychoneurotic reaction, taking the form of a mixture of anxiety and depression. This condition was precipitated by the trauma of the accident and was aggravated by the fact that Lachney could no longer adequately support his family because of his physical impairment. As a result, he experiences nervous symptomology and has a markedly decreased tolerance for stress. In Doctor Laurent's opinion plaintiff should be considered 100% disabled for gainful employment, at least for the foreseeable future.
Considering the pain and suffering, loss of income, loss of wage earning potential, and the possibility that Lachney may be able to engage in gainful employment at some time in the future, we cannot say that the jury abused its "much discretion" in assessing the damages at $100,436.60. Accordingly, the amount of the award will not be upset on appeal. See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
Plaintiff's other two contentions, concerning whether the reimbursement and pro tanto release from paying further compensation benefits awarded to American Mutual, the compensation insurer, are clearly answered by La.R.S. 23:1101 through 1103 of the Workmen's Compensation Law.[2] *1283 Under these statutes, the workmen's compensation insurer had the right to intervene in the employee's suit against the third party tort-feasor in order to receive reimbursement for the amount of compensation benefits already paid. La.R.S. 23:1103 clearly states that the reimbursement shall come out of the damages recovered by the injured employee and that, if the damages recovered are in excess of the reimbursement, liability for compensation benefits ceases "for such part of the compensation due, computed at six percent per annum, and shall be satisfied by such payment." Plaintiff's contentions in this regard are without merit. Billeaud v. United States Fidelity & Guaranty Company, 349 So.2d 1379 (La.App. 3rd Cir. 1977).

III. THE CONTENTIONS OF INTERVENOR, AMERICAN MUTUAL INSURANCE COMPANY.
The first and most serious contention raised by American Mutual in its answer and brief deals with its entitlement to judgment against the tort-feasor, Bridon-American, for the amount of workmen's compensation benefits it may become obligated to pay in the future, when the amount of the excess award to the injured employee is theoretically consumed.
According to American Mutual, La.R.S. 23:1101 gives it the right to recover from the third party tort-feasor any compensation benefits which it may become obligated to pay to the injured employee, and such recovery is not limited to the value of the tort damage by the statute. La.R.S. 23:1103, even though requiring apportionment of the amount of tort damages recovered in the judgment against the tort-feasor between the employee and the insurer, likewise is silent as to restricting the insurer's right to collect from the tort-feasor that portion of the compensation debt exceeding the total tort damage. Thus, American Mutual asks that it be given judgment against the tort-feasor for the amount by which its workmen's compensation debt may exceed the amount of tort damage at some time in the future, if Lachney remains totally disabled.
We do not feel that the intervenor, American Mutual, is correct in its analysis of the law. When Sections 1101 through 1103 of the compensation act are read in conjunction with one another, the legislative scheme governing the rights and liabilities of the injured employee, the employer's *1284 compensation insurer, and the third party tort-feasor is clear. Under Section 1101, either the injured employee or the compensation insurer may bring an action against a third party tort-feasor causing the employee's injury. Under Section 1102, if either brings the action, the other must be notified in order that their corresponding rights against the third party tort-feasor may be protected. Once judgment has been obtained against the third party for the tort damages caused, Section 1103 comes into play to direct how the tort award is to be apportioned. If the damages recovered exceed the amount of reimbursement due to the compensation insurer, the insurer gets full reimbursement for the amount already paid, the injured employee gets the excess, and the insurer's obligation to continue benefits ceases for such part of the compensation due, computed at six percent per annum. If the amount of the tort award is either insufficient or only sufficient to reimburse the compensation insurer, the insurer gets the total amount of the tort judgment and the employee gets nothing in tort. Of course, the employee can still receive compensation benefits.
We do not feel that the legislature's silence in not restricting the right of recovery of the compensation insurer to the total amount of the tort judgment can be construed so as to have expressed a legislative intent to allow the insurer to go beyond the total amount of tort damages for reimbursement of all compensation benefits which the insurer may have to pay, if the tort award is insufficient. If the legislature intended to subject the third party tort-feasor to increased liability beyond the amount of damages caused by his tort, simply because the victim happened to be an employee covered by workmen's compensation at the time the tort was committed, there would have to be a clear and unequivocal legislative expression to that effect. We find none here.
We also note that as a basic rule of statutory interpretation, a court must construe an expression in a statute so as to give it effect, rather than to render it meaningless. If American Mutual's argument is correct, the phrase "if the damages are not sufficient . . . to reimburse the employer for the compensation which he has actually paid," found in La.R.S. 23:1103, would have no meaning because the damages would always be sufficient to at least reimburse the insurer for the amount of compensation paid. We feel that the legislature only intended to allow the compensation insurer relief from the tort-feasor up to the amount of tort damage awarded. Accordingly, American Mutual's claim in this regard is rejected.
American Mutual's second contention deals with the award of legal interest in its judgment. It has pointed out that the judgment awarding it $9,463.60 for reimbursement for benefits paid failed to include a provision for legal interest. We also note that American Mutual has continued to pay benefits during the appeal, pending a final judgment. American Mutual is entitled to reimbursement for all sums paid as workmen's compensation benefits pending a final judgment and is entitled to legal interest on that amount. Willis v. Stauffer Chemical Company, 349 So.2d 1390 (La.App. 3rd Cir. 1977), writ denied, 352 So.2d 1047 (La.1977). The judgment will be amended accordingly.
For the above reasons, the judgment of the District Court is amended to decree that American Mutual Insurance Company, intervenor, shall be paid by Bridon-American Corporation and Travelers Insurance Company, by preference and priority out of the sums awarded to plaintiff, Frank Lachney: (1) the full amount which American Mutual actually paid, up to and including September 20, 1976, the date of the petition of intervention, to or in behalf of Frank Lachney, as weekly workmen's compensation benefits and medical expenses, plus legal interest thereon from date of judicial demand, September 20, 1976, until paid; and (2) the full amount which American Mutual actually has paid or will have paid to or in behalf of Frank Lachney, as compensation benefits and medical expenses, from September 20, 1976, until this judgment becomes *1285 final, plus legal interest on the amount of each such payment from the date the payment was or will have been made, until paid. In all other respects the judgment of the District Court is affirmed. Costs on appeal are assessed one-half to plaintiff and the other half to Bridon-American Corporation and Travelers Insurance Company.
AFFIRMED AS AMENDED.
NOTES
[1] The employment relationship is not an issue.
[2] Prior to a 1976 amendment, which is not significant for purposes of the instant controversy, La.R.S. 23:1101 provided as follows:

"When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.
Any employer having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent."
La.R.S. 23:1102 provides as follows:
"If either the employee or his dependent, or the employer, brings suit against a third person as provided in R.S. 23:1101, he shall forthwith notify the other in writing of such fact and of the name of the court in which the suit is filed, and such other may intervene as party plaintiff in the suit."
La.R.S. 23:1103 provides as follows:
"In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per cent per annum, and shall be satisfied by such payment.
No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him."