GUIDRY, Judge.
The issue presented for review in this appeal is whether the trial court correctly apportioned liability for plaintiffs’ attorney fees and litigation expenses between plaintiffs and intervenors, Jobbers Oil Transport Company (hereafter JOTCO) and its worker’s compensation insurer, United States Fire Insurance Company (hereafter US Fire). We find that the trial court misapplied the formula for allocation of fees and expenses enunciated in Moody v. Arabie, 498 So.2d 1081 (La.1986). Accordingly, we amend the judgment and, in all other respects, affirm.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Elias Darbonne, Jr., was injured in a work related accident on October 27, 1987, while employed as a truck driver by JOTCO. The accident occurred on the premises of Canal Refining Company (hereafter Canal) when Darbonne, while loading diesel fuel into his tank truck, slipped and fell in an accumulation of fuel on the surface of the loading area. The accident was unwitnessed and unreported. As a result of the fall, Darbonne’s back was injured and he underwent a laminectomy, forami-notomy, and discectomy at the L5-S1 level on December 31, 1987. After the injury, Darbonne began receiving weekly worker’s compensation benefits and medical expenses.
On April 5, 1988, plaintiff and his wife, Brenda Darbonne, sued Canal seeking damages for his injuries and her loss of consortium. Canal and its liability insurer, United States Fidelity and Guaranty Company (hereafter USF & G) then filed a third party demand against JOTCO and its liability insurer, Bituminous Casualty Corporation, seeking indemnity and/or contribution. On November 28, 1988, JOTCO and US Fire intervened in the suit to recover weekly compensation benefits and medical expenses paid to or on behalf of Darbonne.[1] Plaintiffs, by supplemental and amending petition, added USF & G as a party defendant to their original demand.
Prior to trial on the merits, plaintiffs settled their claim against Canal and USF & G for $250,000. The compromise agreement, which was not made a part of the appellate record, was not approved by the intervenor. By judgment rendered on March 30, 1990, the third party demand of Canal and USF & G against JOTCO and Bituminous Casualty Corporation was also dismissed because of compromise.
Due to a disagreement between plaintiffs and intervenor concerning their relative responsibilities for attorney fees and costs associated with the prosecution of this case, Canal and USF & G paid plaintiff only $178,000 and deposited the remaining $72,000 into the registry of the court. At the time of the deposit, the $72,000 was slightly greater than intervenor’s lien against the proceeds for weekly compensation benefits and medical expenses paid. Thus, the only issue presented to the trial court was the relative proportionate share of attorney fees and costs, commonly known as Moody fees, to be assessed against plaintiffs and intervenor.
*161 In its written reasons for ruling rendered January 3, 1991, the trial court determined that US Fire had previously paid $76,682.20 in weekly compensation and medical expenses and that the discounted present value of intervenor’s most probable future exposure, 10-year Supplemental Earnings Benefits (SEB), was $89,776.29. The trial judge then divided the sum of these two amounts, $166,458.49, by the plaintiffs total recovery from the third-party tortfea-sor, Canal, $250,000, to obtain the interve-nor’s proportionate interest in the recovery, 67%. Next, the court determined that the one-third contingency fee negotiated between plaintiff and his attorney was reasonable and calculated US Fire’s share of attorney fees as follows:
Total Recovery from $250,000.00 Canal & USF & G
— Total Intervenors’ Li- —166,458.49 ability/Recovery
Plaintiff’s Net Recovery 83,541.51
* Contingency fee percentage 33.33%
Total Attorney fee due plaintiff’s attorney 27,847.17
* Intervenor's Proportionate Interest 67%
Intervenor’s Liability $ 18,657.60 for Attorney fees
The trial court denied intervenor’s claim for a credit for legal work performed by its attorney because it found that “non-dupli-cative work of the intervenor did not significantly affect the outcome”. It then awarded plaintiffs’ 67% of their litigation expenses, $6,591.22, for a total of $4,416.12 to be paid by US Fire as costs to plaintiffs. Finally, the court awarded intervenor legal interest on the net sum due [$76,682.20 — ($18,657.60 and 4,416.12) = $53,508.48] from date of intervenor’s judicial demand until paid. Judgment in accordance with these reasons was rendered and signed on September 4, 1991.
Plaintiffs appealed and specified that the trial court committed error in calculating the fee and expenses due the plaintiffs; in computing the value of future benefits based on SEB rather than total and permanent disability benefits; and, in awarding intervenor legal interest on the money due it. Intervenor also appealed, asserting that the trial court erred in denying its claim for a credit for legal work performed on its behalf which materially contributed to the settlement.
ATTORNEY FEES
Neither plaintiffs nor intervenor question the accuracy of the amounts for weekly compensation and medical expenses, past ($76,682.20) and future ($89,776.29), used by the trial court in its calculation. Plaintiffs do argue that intervenor’s future expected liability should be based on permanent total disability status, discussed infra. However, they do agree that, if Elias Dar-bonne is found to be entitled to only SEB, then the $89,776.29 figure for future liability is correct.
For the reasons which follow, we determine that the trial court erred in calculating intervenor’s proportionate liability for attorney fees by basing the fee on plaintiffs’ net recovery instead of their total recovery from the third party tortfea-sor, Canal, and its insurer, USF & G. It also erred in failing to grant intervenor a credit for non-duplicative legal work performed by intervenor’s attorney which significantly affected the outcome of the case.
Moody v. Arabie, supra, which was reaffirmed by the Louisiana Supreme Court in Taylor v. Production Services, Inc., 600 So.2d 63 (La.1992), clearly dictates that the intervenor’s proportionate share be based on plaintiff’s total recovery. In so holding, the Taylor court, at pp. 66-67, reasoned as follows:
... In Moody, this court held that the plaintiff and the intervenor compensation insurer were co-owners of the right to recover damages from the third party, and that the co-owners were obligated to bear their proportion of the reasonable and necessary litigation expenses, including attorney’s fees, according to their interests in the recovery. The interve-nor’s proportionate share is determined by the ratio that the intervenor’s recov *162 ery, including the present value of the credit for future compensation payments, bears to the total recovery from the tort-feasor. The intervenor’s share of the recovery costs is deducted from the inter-venor’s share of recovery to arrive at the net amount to be reimbursed to the inter-venor from the judgment proceeds, with the balance to be paid to the plaintiff.
* * sic * * *
Implicit in the Moody v. Ardbie holding is the concept that the intervenor who reaps the benefits of the plaintiff’s attorney's efforts, should bear its proportionate part of a reasonable attorney’s fee for those efforts. Also implicit in the decision is the concept that it is the court which should determine and fix a reasonable attorney’s fee on which the apportionment between the parties should be calculated. In determining a reasonable attorney’s fee, the court is not bound by or limited to the contingent fee contract entered into between the attorney and the plaintiff or the precise amount actually charged by the attorney to his plaintiff client. Most tort cases are handled on a contingent fee of a percentage of the total recovery for the plaintiff’s damages. The contract between plaintiff and his attorney in this case provided for a fee of one-third of the recovery, without explanation of whether the percentage should be applied to total recovery or plaintiff’s net recovery. As between the plaintiff and his attorney, it may well be that plaintiff’s obligation is limited to one-third of the amount actually recovered by him. But under Moody v. Ara-bie, the obligation of the intervenor is to contribute its proportionate share of a fee reasonably and necessarily earned by the plaintiffs attorney in prosecuting the suit against the third-party tortfeasor. Allowance of a reasonable fee based on total recovery, to be shared by the parties in proportion to their interest in the recovery, provides an incentive to the plaintiffs attorney to vigorously pursue the third-party claim for the benefit of both parties concerned. Limiting the amount of attorney’s fees on which the intervenor’s proportionate share is based to a percentage of the net amount recovered by plaintiff distorts the intervenor’s obligation and might preclude representation where the plaintiff’s claim is marginal in value or in chances of recovery, but where plaintiff and his attorney are expected to and do in fact take the lead and the risks in prosecuting the claim. (Emphasis ours).
We also conclude that the trial court clearly erred in failing to award intervenor any credit for the reasonable value of its non-duplicative participation in the prosecution of this case. Taylor, supra; Denton v. Cormier, 556 So.2d 931 (La.App. 3rd Cir.1990). The record reflects a detailed and itemized description of counsel for in-tervenor’s involvement in this suit. We find that intervenor’s counsel, in performing work which aided plaintiff’s cause, contributed significantly to the eventual settlement. After a thorough review of the evidence of intervenor’s participation, we conclude that it is entitled to a $10,000 credit against its proportionate share of plaintiff’s attorney fees.
Under the formula enunciated in Taylor which is applicable to the present case,[2] the *163 intervenor is liable for $55,833.33 in fees, less $10,000 credit, and $4,416.12 in litigation expenses, for a total proportionate liability of $50,249.45. In arriving at these amounts, we applied the Taylor formula as follows:
1) Calculate Intervenor’s Proportionate Interest in Recovery a) Past Compensation
Benefits $ 76,682.20
+ Discounted Future Compensation Benefits + 89,776.29
Intervenor’s Recovery $166,458.49
b) Intervenor’s Propor- Intervenor’s tionate Interest = Recovery
Total Recovery from Third Party = $166,458.49 = 67%
$250,000.00
2) Calculate Intervenor’s Share of Litigation Expenses (costs)
Total Litigation Expenses $ 6,591.22
* Intervenor’s Proportionate Interest * 67%
$ 4,416.12
3) Calculate Intervenor’s Share of Attorney Fees
Total Recovery from Third Party $250,000.00 * Plaintiff’s Reasonable Attorney Fee Percentage * 33.33%
Reasonable Attorney Fee 83,333.33
Intervenor’s Proportionate Interest *_67%
Intervenor’s Share of Attorney Fee 55,833.33
— Credit for Interve-nor’s Attorney’s contribution — 10,000.00
Intervenor’s net share due 45,833.33
-I-Intervenor’s Share of Costs [from (2) above] + 4,416.12
Intervenor’s Total Liability $ 50,249.45
Accordingly, it is clear that the trial court erred by determining US Fire’s share of plaintiffs’ attorney fees to be $18,657.60. The judgment will be amended to reflect the correct amount of US Fire’s liability at $50,249.45.
CLASSIFICATION OF FUTURE COMPENSATION CREDIT
The trial court concluded that US Fire’s most probable future exposure was for 10-year SEB, discounted at 8%, for a present value of $89,776.20. Plaintiffs contend that the value should have been based upon permanent total disability benefits. In other words, plaintiffs contend that they proved by sufficient evidence that Elias was permanently and totally disabled as a *164 result of this injury and that, as a result, the trial court should have figured US Fire’s probable future exposure based upon the greater permanent total disability benefits. On the other hand, intervenor counters that Elias’ injury and compensation classification was not an issue decided by the trial court on the merits. The only issue presented to the court, in intervenor’s view, was liability for Moody fees.
We agree with the intervenor’s position but, because the trial court was called upon under Moody and Taylor to estimate US Fire’s most probable future exposure based on a reasonable injury and compensation classification given the medical and vocational rehabilitation evidence, we will address the merits of this assignment of error.
On appellate review of worker’s compensation cases, the trial court’s factual findings with regard to the issue of disability are entitled to great weight and will not be disturbed absent clear error. Latiolais v. Home Insurance Company, 454 So.2d 902 (La.App. 3rd Cir.1984), writ denied, 460 So.2d 610 (La.1984). Plaintiff’s burden of proof as it pertains to permanent total disability is provided in La.R.S. 23:1221(2)(c) as follows:
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
The plaintiff must prove by clear and convincing evidence that he is unable to engage in any employment or self-employment, regardless of the nature of employment or self-employment. Underwood v. Southern Casualty Insurance Company, 525 So.2d 633 (La.App. 3rd Cir.1988).
Applying these principles to the case sub judice, it is clear that the plaintiffs did not carry their burden of proving that Elias was permanently and totally disabled. Dr. Thomas Bertuccini, a neurosurgeon who performed the second surgery, rated Elias’ body disability at five to 15 percent, even given the fact that he had a previously amputated right leg above the knee. Dr. Bertuccinni restricted his lifting to no more than 40 pounds and prohibited him from pulling, pushing, twisting or bending his back. Dr. Reginald Segar, Elias’ family physician, restricted his lifting to 20 pounds from table height and completely from the floor. He felt that Elias would have trouble standing or sitting for more than 15 to 30 minutes at a time. Deborah Graul, a vocational rehabilitation specialist, related that Elias was, as of the date of her report, undergoing training in small appliance repair. Despite his marginal academic background, she found him to be an enthusiastic student and a dream-type of client who was highly motivated. She concluded that, given his lack of stamina and the relative unavailability of jobs in this field, he would probably only be able to work part -time at best.
Under these circumstances, plaintiffs failed to prove by clear and convincing evidence that Elias was unable to engage in any employment or self-employment under the guidelines of La.R.S. 23:1221(2)(c). Accordingly, the trial court did not manifestly err in basing US Fire’s most probable future liability on 10 year SEB.
INTEREST
Plaintiffs contend that US Fire is not entitled to legal interest on the amount awarded to it in satisfaction of its intervention claim for reimbursement of weekly compensation benefits and medical expenses. We disagree. Our brethren of the Fourth Circuit succinctly and correctly passed upon this issue in Chatelain v. Project Square 221, 505 So.2d 177, 186 (La. App. 4th Cir.1987), writs denied, 508 So.2d 71, 74 (La.1987), wherein they stated:
*165 The intervening compensation carrier is entitled to legal interest from the date of judicial demand or intervention. Lachney v. Motor Parts and Bearing Supply, Inc., 357 So.2d 1277 (La.App. 3rd Cir.1978); Willis v. Stauffer Chemical Company, [349 So.2d 1390 (La.App. 3rd Cir.1977)] supra. See also Malone & Johnson at § 370. The insurer is also entitled to legal interest on the amount of each payment made after judicial demand commencing from the date each payment was made until the judgment is paid. Larson v. Huskey, 440 So.2d 769 (La.App. 4th Cir.1983).
See also Harris v. Ballansaw, 576 So.2d 602 (La.App. 4th Cir.1991).
DECREE
The judgment of the trial court is amended as follows. It is ORDERED, ADJUDGED AND DECREED that intervenor, U.S. Fire Insurance Company, is entitled to recover weekly compensation benefits and medical expenses in the' amount of $76,-682.20, less the sum of $50,249.45 representing intervenor’s total liability for attorney fees and litigation costs, which is to be paid to plaintiffs. In all other respects, the judgment of the trial court is affirmed.
All costs of this appeal are to be borne one-half (V2) by U.S. Fire Insurance Company and one-half (½) by plaintiffs, Elias Dar-bonne, Jr. and Brenda C. Darbonne.
AFFIRMED AS AMENDED.

. Despite the fact that both JOTCO and US Fire intervened in this suit, US Fire was the only party awarded judgment in its favor. Apparently, the trial court determined that US Fire, as worker's compensation insurer for JOTCO, had actually paid all of the benefits and was, thus, the only intervenor with a monetary stake in the claim. For purposes of this opinion, the singular form “intervenor” refers to US Fire.

. We note, as did the Louisiana Supreme Court in Taylor, supra, that this issue is now regulated by La.R.S. 23:1103(C), added by Act 454 of 1989, effective January 1, 1990, which governs the apportionment of legal fees and costs between the employer (and its insurer) and the employee in a suit against a third party. That paragraph provides:
C. If either the employer or employee intervenes in the third party suit filed by the other, the intervenor shall only be responsible for reasonable legal fees and costs incurred by the attorney retained by the plaintiff. Such reasonable legal fees shall not exceed one third of the intervenor’s recovery for prejudgment payments or pre-judgment damages. The employee as intervenor shall not be responsible for the employer's attorney fees attributable to post-judgment damages nor will the employer as intervenor be responsible for the attorney fees attributable to the credit given to the employer under Paragraph A of this Section.
The applicability of La.R.S. 23:1102(C) to the facts of this case was not urged by either party. However, it clearly would not apply since the *163 injury occurred on October 27, 1988, more than one year prior to the effective date of paragraph C.
Paragraph (C) drastically reduces the employer/intervenor/insurer liability by making these parties no longer responsible for attorney fees attributable to the credit for future compensation payments. Furthermore, liability is limited to one-third of the intervenor’s recovery for prejudgment payments or pre-judgment damages. This limitation, in turn, increases the plaintiff-employee’s liability for attorney fees and costs and, thus, reduces his eventual net recovery.
The Louisiana Workers Compensation Act in effect on the date of plaintiff s injury is controlling. Hill v. L.J. Earnest, Inc., 568 So.2d 146 (La.App. 2d Cir.1990), writ denied, 571 So.2d 652 (La.1990).
Given that it clearly infringes on an employee's prior right to recovery, Paragraph (C) is a substantive law as opposed to a procedural, remedial or curative statute. See Graham v. Sequoya Corporation, 478 So.2d 1223 (La. 1985); St. Paul Fire & Marine Insurance Company v. E.R. Smith Jr. dA>/a E.R. Smith Electrical Contractor et at, 609 So.2d 809 (La. 1992), Supreme Court docket No. 92-C-1043. As such, it cannot be applied retroactively. La.C.C. art. 6; La.R.S. 1:2.