373 So.2d 595 (1979)
Alton J. LACHNEY, Plaintiff and Appellant,
v.
Robert H. JONES et al., Defendants and Appellees.
No. 7027.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1979.
Rehearings Denied August 15, 1979.
Writ Refused October 19, 1979.
Gravel, Roy & Burnes, Chris J. Roy, Alexandria, for plaintiffs-appellants-appellees.
Stafford, Trimble, Randow & Smith, James T. Trimble, Jr., Alexandria, for defendant-appellee.
Bolen & Erwin, James A. Bolen, Jr., Alexandria, for intervenor-appellee-appellant.
Before CULPEPPER, SWIFT and DOUCET, JJ.
CULPEPPER, Judge.
This is a suit for damages for personal injuries. While working as a carpenter for R. J. Jones & Sons, Inc., a scaffold rolled out from under plaintiff and he fell and suffered the injuries complained of. Plaintiff contends the cause of the accident was either that the scaffold had no locking devices on its casters or that the locking devices were defective. Named as defendants are (1) Mr. Robert Jones, president of R. J. Jones & Sons, Inc., (2) Mr. James Jones, secretary-treasurer of R. J. Jones, (3) Mr. Dan Durand, superintendent for R. J. Jones on the jobsite, and (4) Safeco Insurance Company, their liability insurer. Plaintiff contends the defendants were negligent in failing to furnish him a safe scaffold on *596 which to work. Select Insurance Company intervened to recover workmen's compensation benefits paid to plaintiff as the workmen's compensation insurer of R. J. Jones & Sons, Inc. By a vote of 10 to 2, a jury found no negligence on the part of the defendants.
Plaintiff and the intervenor filed motions for a new trial alleging jury misconduct in violation of LSA-C.C.P. Article 1814. Essentially, the alleged misconduct is that certain members of the jury disregarded the trial judge's instructions not to discuss the case amongst themselves prior to the time it was submitted to them for deliberation. At the hearing on the motions for new trial, the trial judge refused to allow the jurors to testify as to anything that occurred during their deliberations, but, over defendants' objections, he permitted the jurors to testify about discussions amongst themselves prior to commencement of their deliberations. The district judge found that although there were some discussions amongst the jurors about the case prior to the time of their deliberations, these discussions did not affect the jury's verdict. Accordingly, the motions for a new trial were denied. Plaintiff and the intervenor appealed.
The issues on appeal are: (1) Did the trial judge err in denying a new trial? (2) Was the jury clearly wrong in its factual finding of no negligence on the part of the defendants?
MOTION FOR A NEW TRIAL
At the hearing on the motion for a new trial, the trial judge permitted the plaintiff and intervenor, over defendants' objections, to introduce testimony by several jurors that during recesses of the 4-day trial they discussed the case amongst themselves. Some of these jurors stated they thought it was permissible for them to discuss the case before their final deliberations. Plaintiff emphasizes the pre-deliberation discussions amongst the jurors in which jokes were made about Mr. Lachney's conduct in the court room, the way he walked to exaggerate his injury and some of his testimony which implied he was cheating on his wife or hiding income from her. Also, comments by two jurors during the trial to the effect that the case was over as far as they were concerned and that the plaintiff had lost. In addition, there were discussions about a pretrial offer of settlement.
Although a majority of the jurors admitted entering into these pre-deliberation discussions, not one juror testified at the hearing that these discussions affected their decision. All but one testified positively that the discussions did not affect their decision. Only one juror, Mrs. Metoyer, was equivocal. She testified that she had worried about the effect of these discussions on her decision and she really did not know whether it influenced her vote.
LSA-C.C.P. Article 1814 provides:
"A new trial shall be granted if it be proved that the jury was bribed or has behaved improperly so that impartial justice has not been done."
There is a serious question of law as to whether the trial judge erred in permitting the jurors to testify as to their pre-deliberation discussions. In Renz v. Texas & Pacific Railway Company, 138 So.2d 114 (La. App. 3rd Cir. 1962) the defendant applied for a new trial on the basis of affidavits by several jurors that they intended to award damages only for the death of plaintiff's 5-year-old daughter and not for the death of plaintiff's husband, who was driving the automobile. The trial judge sustained the objection of plaintiff to any testimony by jurors to impeach their verdict. In holding the trial judge was correct, this court stated the general rule in an opinion written by then Judge Tate, now an associate justice on our Supreme Court:
"The trial court correctly held inadmissible the affidavits or testimony of jurors to impeach their own verdict or to show on what grounds it was rendered. Long ago, under similar circumstances, our Supreme Court held: "The testimony was objected to and ruled out, on the ground that a juror cannot be heard as a witness to impeach the verdict of a jury of which he was a member. The ruling was manifestly correct, under repeated decisions of this court. (Citations omitted)
*597 No Louisiana cases contrary thereto are cited by defendant-appellant, and none could be found. It therefore appears that, under the settled jurisprudence, the trial judge was correct in refusing to admit evidence showing that the jurors wished to impeach their verdict.
The holding of the Louisiana courts seems to be in accord with the jurisprudence of other states. In 53 Am.Jur. "Trial" Section 1105 (1945), the general rule, along with the reasons for the rule, are stated:
"While matters of impeachment extrinsic to the verdict may, according to the view of many courts, be shown by the testimony of jurors, it is a long-established and generally accepted doctrine, except where modified by statute, that testimony or affidavits of jurors impeaching a verdict rendered by them will not be received where the facts sought to be shown are such as inhere in the verdict.
"The rule if founded on public policy, and is for the purpose of preventing litigants or the public from invading the privacy of the jury room, either during the deliberations of the jury or afterwards. It is to prevent over-zealous litigants and a curious public from prying into deliberations which are intended to be, and should be, private, frank, and free discussions of the questions under consideration. Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of oath.
"Testimony of the jurors to impeach their own verdict is not excluded because it is irrelevant to the matter in issue, but because experience has shown that it is more likely to prevent them to promote the discovery of the truth. Hence, the affidavit of a juror cannot be admitted to show anything relating to what passed in the jury room during the investigation of the cause, or the effect of a colloquy between the court and a juror, or the arguments made to a juror by a fellow juryman. The rule that a verdict cannot be impeached by the testimony of a juror is generally adhered to where it is sought to impeach a verdict on grounds of misconduct on the part of the juror or his fellow jurors, despite apprehension expressed in many cases that such rule sometimes serves the cause of injustice. In some jurisdictions the rule has been changed by statute allowing affidavits of jurors for the purpose of impeachment of a verdict on the ground of misconduct of the jury. It seems, moreover, to be a recognized limitation in many jurisdictions that if the foundation can be laid by testimony aliunde that the jurors were guilty of such misconduct as to warrant setting aside the verdict, evidence of the jurors in corroboration and in amplification thereof may be heard" pp. 769-771.
More recent cases have followed the above general rule. See Dieudonne v. Guidry, 336 So.2d 990 (La.App. 3rd Cir. 1976) where the plaintiff unsuccessfully attempted to use the affidavits of certain jurors to impeach their verdict, and to introduce evidence that the foreman of the jury had visited the scene of the accident during the trial; Washington v. Lake City Beverage, Inc., 352 So.2d 717 (La.App. 3rd Cir. 1977) where the defendants sought to introduce the affidavit of the foreman of the jury; and Blandino v. Brown Erection Company, Inc., 341 So.2d 577 (La.App. 2d Cir. 1977), where plaintiff sought to show that a male juror was highly opinionated and unduly influenced the jury.
We find no Louisiana cases which discuss a distinction between jury misconduct during deliberations and misconduct prior to deliberations. The above quotation from the Renz case stating the strong public policy reasons for the rule against jurors being permitted to impeach their verdict impresses *598 us that the rule should apply to pre-deliberations misconduct as well as misconduct during deliberations.
We have found in 32 A.L.R.3d, page 1362, et seq., an extensive annotation on the question of jury misconduct outside the jury room. According to this annotation, a majority (22) of the jurisdictions which have considered the issue follow the strict rule that jurors are not permitted to impeach their verdict whether the misconduct complained of occurred inside or outside the jury room. Fifteen jurisdictions make some distinction between conduct inside and outside the jury room. In most of these jurisdictions, testimony or affidavits of jurors are admissible if they relate to acts which are overt, external and extraneous. In other words, such affidavits or testimony must pertain to the objective facts of what a juror did and not to the subjective effect which his act had on either him or on his fellow jurors in arriving at their verdict. For a further discussion of the rationales used in those jurisdictions which follow the minority rule, see the annotation.
It is our view that Louisiana jurisprudence has followed and should follow the majority rule that no distinction should be made between jury misconduct inside and outside the jury room. The strong public policy reasons quoted from Renz above apply to both. We conclude that the trial judge in the present case erred in permitting the jurors to testify for the purpose of impeaching their verdict.
Although we think the trial judge erred in permitting the jurors to testify, the result would be the same in this case even if we considered the testimony of the jurors. After hearing all of the jurors testify as to the pre-deliberation discussions amongst themselves, and particularly those discussions emphasized by plaintiff as stated above, the trial judge found as a fact that these discussions did not affect their verdict. Not one juror testified that the discussions did affect his verdict. Only one juror said that it may have affected her verdict. Clearly, under the evidence introduced at the hearing on the motion for a new trial, the trial judge was not manifestly erroneous nor clearly wrong in concluding that these pre-deliberation discussions amongst the jurors did not affect their verdict.
NEGLIGENCE OF DEFENDANTS
We next address the issue of whether the jury was clearly wrong in its finding of fact that defendants were free of negligence. See Arcenaux v. Domingue, 370 So.2d 1262 (La.1979) for the rule of appellate review that findings of fact by the jury must be affirmed unless "clearly wrong".
The evidence shows that Mr. Lachney had worked as a carpenter for almost 20 years, and had much experience working on scaffolds. At the time of this particular accident, Lachney was working with another carpenter named "Ham", installing 8-foot pieces of sheetrock. Ham was on the scaffold, and Lachney was cutting the pieces of sheetrock and handing them up to him. Ham let a piece of sheetrock slip, and he called to Lachney for help. Lachney testified he was trying to climb up the scaffold when it rolled away from the wall, causing him to fall. Plaintiff contends the cause of the accident was that the scaffold either had no locking devices on its casters or that the locking devices were defective. He seeks to recover against Robert Jones and James Jones on the theory that they are executive officers of the corporate employer, and against Danny Durand on the theory that he was the supervisor for the employer on the job, and that these three defendants were negligent in not providing a safe scaffold.
There is much conflict in the testimony as to whether there were locking devices on the casters of the scaffold, and as to whether the locking devices, if any, were defective. Plaintiff's own testimony is contradictory. At one point he testified that the casters had no locking devices. At another point he stated that the pedals on the locking devices were broken off.
*599 Plaintiff also testified that he told defendant Durand, the supervisor, and fellow workers Normand and Carmouche that the scaffold had no locking device. These three men denied hearing such a statement by plaintiff.
Normand testified that he and Carmouche had been using this same scaffold two or three days prior to the accident, and the locking devices were working properly. Normand also testified that in addition to using the locking devices it was customary amongst experienced carpenters to block the wheels with pieces of wood.
Mr. Johnny Brown, Jr., a utility man for Jones, testified that he and a Mr. Dickerson checked all casters on the scaffolds which were sent out on the job from the warehouse, and all of them had locking devices which were working properly.
Mr. Jimmy Carmouche, a carpenter on the job, testified the rollers on the scaffold on which he worked had locking devices which worked properly. Mr. Gerald Howell, business manager for the carpenters' union, testified he visited the jobsite, that there was a job steward on the job every day, that the union sought to protect its employees against working under unsafe conditions, and that the union had received no complaints about the scaffolds.
In addition to the above, there was other conflicting testimony presented by plaintiff and by defendants. From a careful review of the record, we are convinced the jury was not clearly wrong in finding that the defendants were free of negligence. Essentially, it was a question of credibility of the witnesses. The jury chose to believe defendants and their witnesses in preference to plaintiff and his witnesses.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff and the intervenor.
AFFIRMED.
SWIFT, J., concurs with written reasons.
SWIFT, Judge, concurring.
I am in complete agreement with the majority opinion, except for the inclusion therein of the ruling that the alleged juror misconduct did not affect the jury's verdict. In my opinion it is unnecessary for this court to pass on that issue, because the misconduct complained of was not established at the hearing on the motion for a new trial. The only evidence thereof was testimony of several jurors, which was inadmissible as an attempt to impeach their own verdict. I concur in all other respects.