446 So.2d 383 (1984)
Charles CONNER, Plaintiff-Appellant,
v.
FLORIDA FARM BUREAU CASUALTY INSURANCE COMPANY, et al., Defendants-Appellees.
No. 83-336.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1984.
*385 Raleigh Newman, Lake Charles, for plaintiff-appellant.
Plauche, Smith and Nieset, Frank M. Walker, Jr., Lake Charles, for defendants-appellees.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert S. Dampf, Lake Charles, for third party plaintiff-appellee.
Before GUIDRY, CUTRER and STOKER, JJ.
GUIDRY, Judge.
Charles Conner brought this suit to recover damages for personal injuries allegedly sustained by him in an automobile collision which occurred on October 17, 1980. Named as defendants were Patricia Ouzts; Florida Farm Bureau Casualty Insurance Company (hereafter Florida Farm Bureau), Ms. Ouzts' insurer; and, State Farm Mutual Automobile Insurance Company (hereafter State Farm), plaintiff's underinsured motorist carrier. State Farm filed a third party demand against Patricia Ouzts and Florida Farm Bureau for contribution and indemnity. After trial on the merits, the jury returned a special verdict, finding that both the defendant, Patricia Ouzts, and the plaintiff, Charles Conner, were negligent, which negligence proximately caused the accident; attributing 60% of the fault to the defendant and 40% to the plaintiff; and, finding that the total amount of damages sustained by the plaintiff was $25,000.00. The trial judge entered judgment on November 12, 1982, in accord with the jury's verdict, in favor of Charles Conner and against Florida Farm Bureau and Patricia Ouzts in solido in the principal sum of $15,000.00. Plaintiff and defendants were cast for costs at the trial level in the proportions of 40% and 60%, respectively. The judgment made no specific disposition of State Farm's third party demand. Plaintiff thereafter filed a motion seeking reformation of the jury verdict or additur or new trial which motion was denied by the trial judge on January 12, 1983.
Plaintiff appeals devolutively from the denial of his motion and from the judgment. The defendants neither appeal nor answer the appeal.
The issues on appeal concern the correctness of the trial court's ruling which denied plaintiff's motion for reformation of the jury verdict, new trial or additur; quantum; and, whether the jury clearly erred in finding plaintiff 40% negligent.

FACTS
The accident occurred one mile south of Sulphur in Calcasieu Parish, at the intersection of Louisiana Highway 27 and Carlyss Drive at approximately 6:40 a.m. on October 17, 1980. Carlyss Drive is a two lane, blacktop road which runs east and west. Louisiana Highway 27 runs north and south. A "T" intersection is formed at the point where Carlyss Drive and Highway 27 meet. There is a stop sign controlling east bound traffic on Carlyss Drive at this intersection. Louisiana Highway 27, also known as the "Hackberry Highway", is a blacktop two lane road. There are no traffic controls for Highway 27 at this intersection other than a solid yellow no passing line. The posted speed limit on Highway 27 is 55 m.p.h. It had been raining earlier that morning and the roads were wet and slick.
Immediately prior to the accident, the defendant, Patricia Ouzts, was operating a vehicle heading east on Carlyss Drive on her way to work at PPG, accompanied by Mike McCray and Fred Fell. The plaintiff, Charles Conner, was driving a pickup truck traveling south on Highway 27 following a van. The right turn signal had been activated on the van which had pulled at least partially onto the right apron indicating a right turn onto Carlyss Drive. Ms. Ouzts, intending to turn left on Louisiana Highway 27, had brought her vehicle to a stop *386 at the intersection. As the van commenced its right turn onto Carlyss Drive, Ms. Ouzts proceeded into the intersection, at which time her passenger, Mr. Fell, observed plaintiff's vehicle and shouted a warning. Ms. Ouzts applied her brakes but skidded halfway into the southbound lane of Highway 27 where the left front portion of her car was struck by the front of the Conner truck.
As a result of the accident, plaintiff sustained certain injuries to his neck and was treated by several physicians and a chiropractor. The extent and causation of plaintiff's claimed disabilities are vigorously contested by the parties.
The plaintiff requested that this matter be tried to a jury. Counsel for plaintiff submitted several requests for special jury instructions to the court but none relative to an award of damages under comparative negligence. The trial judge gave, among others, the following instructions relative to damages before the jury retired:
"If you find that Charles Conner in part caused his injury that will not prevent recovery by him, it only reduces the amount of his recovery. In other words, if you find that this accident was due partly to the fault of Charles Conner, then you would write in that percentage as your finding on the special verdict form I will give to you. Such a finding would not prevent the plaintiff from recovering. The Court would merely reduce the plaintiff's total damages by the percentage that you insert. If you find that Charles Conner was negligent, you might find any percentage from 1 to 100....

If you find, in accordance with the instructions I have given you, that any injuries which are subject to this action were a result of the negligence of Charles Conner and also the fault of Patricia Ouzts, you should assign a percentage of such negligence to plaintiff's conduct and assign a percentage of such fault to defendants' conduct without reference to the total amount of damages which may have been sustained in this accident."
Counsel for plaintiff failed to object to the sufficiency of these charges. Nor did he object to the form or substance of the special verdicts submitted to the jury.
The jury returned the following interrogatory verdict sheet:
 "VERDICT SHEET
(1) Was the defendant, Patricia Ouzts negligent, and,
if so, was this negligence a cause-in-fact of the
accident?
 ANSWER: Yes &check; 
 No ___
If your answer is "Yes", proceed to Question Number 2.
If your answer is "No", you need not proceed any
further. Have your foreman sign and date the end of
this verdict sheet and notify the bailiff.
 (2) Was the plaintiff, Charles Conner negligent, and,
 if so, was this negligence a cause-in-fact of the
 accident?
 ANSWER: Yes &check; 
 No ___
If your answer is "Yes", proceed to Question Number 3.
If your answer is "No", proceed to Question Number 4.
 (3) If your answer to Question Numbers 1 and 2 are
 "Yes", then, taking the combined fault or
 negligence of Patricia Ouzts and Charles Conner
 that caused the damages if any, of the plaintiff, as
 One Hundred Percent (100%)What percentage of
 that fault or negligence is attributable to the
 defendant, Patricia Ouzts, and what percentage if
 any, is attributable to the plaintiff, Charles Conner?

 ANSWER:
 (a) Percentage of fault or negligence
 attributable to the defendant,
 Patricia Ouzts: 60 %
 _____
 (b) Percentage of fault or negligence
 attributable to the plaintiff, Charles +
 Conner: 40 %
 _____
 TOTAL 100 %

If your answer to Question No. 1 was "Yes", please
answer the following question relating to the amount of
damages, if any. Have your foreman sign and date the
end of this verdict sheet and notify the bailiff.
 (4) What damages, if any, do you find that plaintiff,
 Charles Conner sustained as a result of this
 accident? Write in a dollar amount.

 ANSWER: $ 25,000.00
 ___________

 /s/ C. E. Watkins 
 FOREMAN
Lake Charles, Louisiana
October 22, 1982"
*387 At the hearing on plaintiff's motion for reformation of the jury verdict or additur or new trial, plaintiff introduced affidavits of all of the jurors to the effect that the jury award was intended to represent only 60% of the damages suffered by plaintiff, i.e., they intended that the plaintiff receive $25,000.00 without any further deductions.

DENIAL OF MOTION TO REFORM JURY VERDICT
Plaintiff contends that the jury made an error in calculation in answering the jury interrogatories and asserts the right to have the jury verdict reformed under LSA-C.C.P. Article 1951, which provides as follows:
"A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation."
By its clear terms, this article is made applicable to the amendment of final judgments and has no application to reformation of jury verdicts. See Hebert v. Hebert, 351 So.2d 1199 (La.1977). The motion to reform the jury verdict was therefore properly denied.
We also conclude that the trial judge properly denied the motion for new trial and the alternative motion for additur. Plaintiff did not object to the jury instructions at trial and does not now complain of their insufficiency nor does he complain of the interrogatories which in fact track the language of LSA-C.C.P. Art. 1811. As aforestated, at the hearing on the motion, plaintiff relied solely on the affidavits of the jurors to show that the jury was nonetheless confused in answering the interrogatories. The effect of these affidavits is to impeach the verdict of the jury. As a general rule, a juror cannot be heard to impeach the jury's verdict. Renz v. The Texas & Pacific Railway Company, 138 So.2d 114 (La.App. 3rd Cir.1962); Dieudonne v. Guidry, 336 So.2d 990 (La.App. 3rd Cir.1976); Washington v. Lake City Beverage, Inc., 352 So.2d 717 (La.App. 3rd Cir.1977), writ refused, 354 So.2d 1050 (La. 1978); Lachney v. Jones, 373 So.2d 595 (La.App. 3rd Cir.1979), writ denied, 376 So.2d 959 (La.1979).
The purpose of this rule as stated in 53 Am.Jur. "Trial" Section 1105, frequently cited in Louisiana cases, is as follows:
"The rule is founded on public policy, and is for the purpose of preventing litigants or the public from invading the privacy of the jury room, either during the deliberations of the jury or afterwards. It is to prevent over-zealous litigants and a curious public from prying into deliberations which are intended to be, and should be, private, frank, and free discussions of the questions under consideration. Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of oath.
"Testimony of the jurors to impeach their own verdict is not excluded because it is irrelevant to the matter in issue, but because experience has shown that it is more likely to prevent them to promote the discovery of the truth ..."
In our view, the circumstances of this case provide no reason for a departure from this general rule. 53 Am.Jur. "Trial", Section 1110, 1115; 88 C.J.S. Trial § 423; Rains v. Diamond M. Co., 396 So.2d 306 (La.App. 3rd Cir.1981), writ denied, 399 So.2d 623 (La.1981).
There is absolutely no ambiguity in the instructions of the court or in the interrogatories submitted to the jurors. The question posed to the jury was "What damages, if any do you find that plaintiff, Charles Conner sustained as a result of this accident? Write in a dollar amount." In no way can this question be construed as eliciting a net amount response. The court's instructions were likewise clear and to the *388 effect that the jury should assess the total amount of damages sustained by plaintiff and the court would reduce the plaintiff's total damages by the percentage of plaintiff's negligence as found by the jury. The jury was not required to calculate anything, only to assess damages. There being no calculation required nor calculation made, there was no error in calculation. To accept plaintiff's argument in this regard would mean that the jury found plaintiff's damages to have been $41,666.66 and then reduced it by 40% to reach their verdict of $25,000.00. Such a scenario seems highly improbable.
The case was tried in the courtroom before the jury as a collective body. At the hearing, the evidence was presented by affidavit. We do not know how the jurors were approached, the question posed, how that question was posed, or the circumstances under which it was posed.
In each jury trial, the jury instructions given to a jury cover many written pages and involve many legal issues. If the losing side in a jury trial is permitted to approach the jurors individually following the trial and probe to find a point in the jury instructions on which the jury was confused, no jury verdict would be sacred. The wisdom of the well settled rule discussed above is apparent. We are compelled to agree with the recent statement of our brothers of the Fifth Circuit:
"Finally, the plaintiffs' complaint that the jury was `too confused' to return a proper verdict is totally without merit. Confusion of the jury is one of the hazards one must foresee when trying a case to a jury; it is the obligation of the partiesor, more properly, their attorneysto present their side of the evidence in such a way that the jury will understand it ...
"Further, except for polling and certain types of extreme irregularities such as tampering, the law does not allow any inquiry into the method or thought process by which a jury reaches its verdict..."
Nailor v. International Harvester Company, et al, 430 So.2d 784, (La.App. 5th Cir.1983).
Peremptory grounds for granting a new trial in a jury case are present if it be proven the jury was bribed or behaved improperly so that impartial justice has not been done. LSA-C.C.P. Art. 1814. Otherwise, the trial judge is granted wide discretion in allowing or denying the motion. LSA-C.C.P. Art. 1973. Miller v. Chicago Insurance Company, 320 So.2d 134 (La. 1975). We find no error in the trial court's conclusion to deny plaintiff's application for new trial.

NEGLIGENCE OF PLAINTIFF
Plaintiff contends that the jury committed manifest error in finding that he was guilty of conduct which was a cause in fact of the accident. Our careful review of the record convinces us that there is merit to this contention.
That the negligence of Ms. Ouzts was a substantial cause of the accident is clearly established in the record and is not at issue on appeal. The defendants contends however that the jury apparently concluded that Conner had pulled at least partially into the northbound lane in order to pass the right turning van in violation of the statutory prohibition against passing in that area and therefore properly found plaintiff guilty of negligence which proximately caused the accident.
Although we find that the record reasonably supports such a factual finding by the jury, this substandard conduct will not support a finding of negligence on the part of plaintiff unless such conduct was a cause in fact of the accident. Breithaupt v. Sellers, 390 So.2d 870 (La.1980); Dixie Drive It Yourself System New Orleans Company v. American Beverage Company, 242 La. 471, 137 So.2d 298 (La.1962); Carey v. Ory, 421 So.2d 1003 (La.App. 3rd Cir.1982), writ denied 426 So.2d 178 (La. 1983).
Whether plaintiff's conduct was a cause in fact of his injury is a question of *389 fact which must be proved by the defendants by a preponderance of the evidence. Coleman v. Jackson, 422 So.2d 179 (La. App. 3rd Cir.1982). In the instant case, plaintiff was traveling on the favored thoroughfare and had the right of way. The defendants concede and all of the evidence indicates that the point of impact was entirely in the southbound lane. Even though plaintiff may have been partially in the northbound lane, in violation of the statutory prohibition against passing, the collision would have occurred irrespective of this conduct and was solely a result of Ms. Ouzts' conduct. The defendants do not point out, and the record does not reveal, any other substandard conduct on the part of plaintiff which might be considered a cause in fact of his injuries.
We conclude that the jury's determination that the legal cause of the accident was attributable 40% to the plaintiff is clearly wrong. We therefore reverse this finding and attribute 100% of the fault to the defendant, Ms. Ouzts.

QUANTUM
Plaintiff contends that the amount of the award was so inadequate as to constitute an abuse of the much discretion afforded the trial court on the measure of damages under LSA-C.C. Art. 1934.
In resolving this issue, we are aided by the following expressions of the standard of review:
"Adequacy or inadequacy of an award should be determined by the facts and circumstances peculiar to the case under consideration."
Boutte v. Hargrove, 290 So.2d 319 (La. 1974) at pp. 321-322.
"Unless the record demonstrates that the trial court abused the `much discretion' provided for in fixing damages (C.C.1934), the appellate court should not disturb the award. Fox v. State Farm Mutual Automobile Insurance Co., 288 So.2d 42 (La.1974).... The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court."
Bitoun v. Landry, 302 So.2d 278 (La.1974) at pg. 279.
The thrust of plaintiff's argument is that inasmuch as the provable special damages greatly exceeded the total of $25,000.00, the award clearly constitutes an abuse of discretion. However, plaintiff's argument begs the question of whether plaintiff actually carried the burden of proving the alleged items of special damages.
The evidence presented at trial raises serious issues of causation of plaintiff's claimed disabilities and the extent of plaintiff's injuries. Although there were several claims for special and general damages, the jury award was made by unitemized general verdict which leaves the jury's findings of causation and the extent of plaintiff's injuries as well as the assessment of particular items of damages unascertainable.
In view of the conflicting medical testimony which the jury was required to evaluate and the fact that plaintiff's credibility was seriously put at issue, we find that the evidence reasonably supports a conclusion by the jury that the plaintiff had significant neck problems prior to the subject accident, and that while the subject accident may have aggravated those complaints, he had completely recovered from any injury occasioned by the accident by February of 1981 when he was released to return to full duty.
Under the circumstances, we are unable to find that the jury abused its much discretion.
For the above and foregoing reasons, the judgment of the trial court is amended to increase the award to Charles Conner from the sum of $15,000.00 to the sum of $25,000.00 and to cast defendants for all costs in the trial court. In all other respects, the *390 judgment is affirmed. Costs of appeal are assessed to defendants.
AMENDED AND AFFIRMED.