622 So.2d 257 (1993)
Peggy T. THERIOT
v.
Nacis J. THERIOT.
No. 92 CA 1345.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
Rehearing Denied August 4, 1993.
*258 Stanley L. Perry, Galliano, for plaintiff-appellee Peggy T. Theriot.
Edward T. Diaz, Golden Meadow, for defendant-appellant Nacis J. Theriot.
George J. Ledet, Jr., Cut Off, for Movers South Lafourche Bank & Trust Co.
Before WATKINS, CRAIN and GONZALES, JJ.
WATKINS, Judge.
A threshold issue presented by this appeal is whether there was jury misconduct sufficient to impeach a verdict in favor of appellant's former wife awarding her damages for defendant's fraud. We find no *259 merit in defendant's claim that the trial court erroneously excluded post-trial testimony of jurors, even for the limited purpose of an attempted proffer. The imperviousness of jury deliberations is a concept bedrocked in public policy. Finding that defendant has no right to rely on jurors' self-impeachment, we affirm the trial court's denial of a new trial.
The record reveals conflicting testimony at the trial on the merits concerning the representations made by the defendant, representations that the defendant claimed were accurate and that the plaintiff claimed were fraudulent. We are constrained to hold that the jury did not commit manifest error in finding that defendant committed fraud, and we affirm.

CLAIM OF JURY MISCONDUCT
Plaintiff, Peggy T. Theriot, filed suit against her former husband, Nacis J. Theriot, alleging that his intentional misrepresentations of values of their community property assets caused her to enter into a partition agreement whereby she was deprived of a substantial sum of money.
The matter was tried by jury before Judge Jerome J. Barbera, III, of the Seventeenth Judicial District Court for the Parish of Lafourche. The plaintiff was represented by Stanley L. Perry of Galliano, Louisiana, and the defendant was represented by Edward T. Diaz of Golden Meadow, Louisiana. The two were the same attorneys who represented the former spouses in the divorce proceedings.
Following the jury trial the defendant procured information concerning the deliberations of the jury and included same in what he now calls the "Griffin affidavit." Grounding his arguments on the statements contained in the affidavit, defendant launches a two-fold attack on the jury verdict: first, that it was tainted by the bias and prejudice of one juror, namely, the foreman Allison Lefort; and second, that the jury deviated from the court's instructions regarding the order in which the members were to deliberate and decide the issues of fraud and damages, thus causing three jurors to change their votes on fraud and to break a deadlock.
Assuming for the sake of argument that Ms. Lefort was biased against the judge and defendant's counsel because of a previous in-court encounter, nevertheless, her presence on the jury is not grounds for granting a new trial pursuant to LSA-C.C.P. art. 1972 (formerly Article 1814). The article provides in pertinent part that a new trial shall be granted when "the jury was bribed or has behaved improperly so that impartial justice has not been done." There is no allegation by defendant that Ms. Lefort attempted to bribe the jury. Furthermore, the presence on a jury of a highly opinionated person does not constitute "improper behavior" that precludes impartial justice within the meaning of Louisiana Code of Civil Procedure. Blandino v. Brown Erection Co., 341 So.2d 577 (La.App. 2d Cir.1977).
Nor is defendant's assertion that the jury failed to follow instructions a matter about which he would be able to offer any admissible and credible, supporting proof. His allegations of faulty procedure stem from the Griffin affidavit, and the proof he claims he was erroneously barred from presenting would have consisted of the testimony of the jurors. It is well settled that Louisiana jurors cannot impeach their own verdicts through affidavits and testimony. Coleman v. Brooks, 583 So.2d 133 (La.App. 4th Cir.1991); Pitts v. Bailes, 551 So.2d 1363 (La.App. 3d Cir.), writs denied, 553 So.2d 860 (La.1989) and 556 So.2d 1262 (La.1990).
The rule against self-impeachment has been codified in LSA-C.E. art 606, effective January 1, 1989. Defendant's reliance on the "new" rule found in Paragraph B of Article 606 is misplaced. Paragraph B provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to *260 or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror.... Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
Defendant argues that the jurors were specifically instructed by the judge to deliberate on the question of fraud first, and only if they found fraud, to deliberate on the issue of damages. Accepting as true the assertion that the vote on the amount of damages convinced the deadlocked jurors to change their votes on fraud, the type of testimony that would support such a charge is made inadmissible by the express provision of Article 606: "(A) juror may not testify ... to the effect of anything upon his ... mind ... as influencing him to assent to ... the verdict...." The alleged departure from the voting procedure outlined in the judge's instructions cannot be classified as an "outside influence" which would be an exception to the prohibition of Article 606.
Accordingly, we hold that the defendant has not alleged any type of jury misconduct that would have entitled him to a hearing at which affidavits and testimony of the jurors would have been admissible. Accordingly, it was not error for the trial court to suppress the subpoenas by ex parte order. We reiterate the rule applied by this court in Cosie v. Aetna Casualty & Surety Ins. Co., 527 So.2d 1105 (La.App. 1st Cir.1988): a juror cannot be heard to impeach the jury's verdict. Finally, we adhere to the principles stated in a case we previously cited with approval, Conner v. Florida Farm Bureau Casualty Ins. Co., 446 So.2d 383 (La.App. 3d Cir.1984), as follows:
As a general rule, a juror cannot be heard to impeach the jury's verdict. Renz v. Texas & Pacific Railway Company, 138 So.2d 114 (La.App. 3rd Cir.1962); Dieudonne v. Guidry, 336 So.2d 990 (La.App. 3rd Cir.1976) [writ denied, 339 So.2d 853 (La.1976)]; Washington v. Lake City Beverage, Inc., 352 So.2d 717 (La.App. 3rd Cir.1977), writ refused, 354 So.2d 1050 (La.1978); Lachney v. Jones, 373 So.2d 595 (La.App. 3rd Cir.1979), writ denied, 376 So.2d 959 (La.1979).
The purpose of this rule as stated in 53 Am.Jur. `Trial' Section 1105, frequently cited in Louisiana cases, is as follows:
`The rule is founded on public policy, and is for the purpose of preventing litigants or the public from invading the privacy of the jury room, either during the deliberations of the jury or afterwards. It is to prevent over-zealous litigants and a curious public from prying into deliberations which are intended to be, and should be, private, frank, and free discussions of the questions under consideration. Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of oath.
`Testimony of the jurors to impeach their own verdict is not excluded because it is irrelevant to the matter in issue, but because experience has shown that it is more likely to prevent them (sic) to promote the discovery of the truth ...'
446 So.2d at 387.

MISREPRESENTATIONS ABOUT COMMUNITY PROPERTY
The background facts that led to this suit for fraud between former spouses are as follows.
Plaintiff and defendant were married in 1955 in Lafourche Parish and established their matrimonial domicile there. In August, 1977, Nacis Theriot left the family home. Suit was filed by Peggy Theriot, and judgment of divorce was granted to her on March 3, 1978. On December 13, 1977, prior to the divorce, Nacis Theriot, through his attorney, provided to plaintiff, *261 her counsel, and the court-appointed notary, a 13-page document entitled "Recapitulation of Nacis J. Theriot assets and Liabilities." The document purported to be a comprehensive accounting of community assets. Mr. Theriot disclosed the total net value of the community estate to be $318,606.16. On the same day that the judgment of divorce was rendered, the parties entered into a "Community Property Settlement," a contract that was recorded in the records of Lafourche Parish.
Almost 10 years later, on November 5, 1987, there was a hearing involving the former spouses, pursuant to a motion to terminate alimony filed by Mr. Theriot. Under oath, in response to questions by his own counsel, Mr. Theriot reviewed in detail the items listed in the "Community Property Settlement" of 1978. After the hearing, the trial court denied Mr. Theriot's motion to terminate alimony. The court observed that according to the 1978 "settlement" and Mr. Theriot's own 1987 "estimates" of the values of the corporations at the time of the 1978 settlement in which he was involved, Mr. Theriot received $1,500,000 in assets compared with the $350,000 received by his wife.
Thereafter, Peggy Theriot filed this lawsuit contending that her former husband violated his fiduciary duty to her, misrepresented the truth, and defrauded her. The suit for fraud was tried by a civil jury, which returned its verdict on July 12, 1991. The jury's verdict in the instant case consists of two parts: first, the factual finding that Nacis Theriot committed fraud on Peggy Theriot; second, the determination that Peggy Theriot's damages totalled $292,000.
The jury was instructed that to reach the conclusion that fraud was committed, the jury had to find:
Number one, that Nacis Theriot in his declaration to Peggy Theriot either misrepresented, suppressed, or was silent about the truth regarding the assets and liabilities of the community that existed between the parties; and
Number two, that Nacis Theriot's intentional misrepresentation, suppression, or silence regarding the true assets and liabilities of the community was made with the intent either to obtain an unjust advantage over Peggy Theriot or to cause a loss or inconvenience to Peggy Theriot; and
Number Three, as a result, Peggy Theriot did in fact suffer an unjust disadvantage, loss, or inconvenience.
The major thrust of defendant's argument on appeal is that he was entitled to a judgment notwithstanding the verdict because the jury's verdict was contrary to the law and the evidence. Defendant argues that plaintiff in a "deliberate pattern" presented only asset values, and no evidence of obligations, to the jury. Defendant states, "The plaintiff in a fraud case of this nature must produce asset values and obligations with the net result being net asset values, which plaintiff must then compare to values used in the Community Property Settlement, to show a difference in values to substantiate the fraud claim." We find no merit in this argument by defendant in light of the failure of Mr. Theriot to provide the former Mrs. Theriot with complete information about assets and obligations prior to the partition of the community. Obviously, the jury was convinced the lack of information on his part was a "deliberate pattern" that amounted to fraud.
The jury instructions provided by the trial judge are consistent with the jurisprudence defining the fiduciary relationships between the parties. The court in Pitre v. Pitre, 247 La. 594, 172 So.2d 693, 695 (1965) defined the duty of the husband as head and master of the community as follows:
Thus when the marriage is dissolved and the community property is to be partitioned, he stands in a fiduciary relationship toward his wife and owes to her the duty of full disclosure of the community property and its value, and must not conceal or misrepresent any material fact upon which she has a right to rely and upon which she might rely.
This court, in following the Pitre rationale, has cautioned that the husband's duty is not necessarily to provide a "formal *262 accounting." Instead, "(w)hat the supreme court required in Pitre and what we interpret that decision to mean is that the husband must be truthful and honest, he must not hide or fail to give any information to his wife, or stated another way, the wife must receive a true, honest, and full picture of the community." Due' v. Due', 560 So.2d 917, 919 (La.App. 1st Cir.), writ refused, 567 So.2d 612 (La.1990). The duty of the husband to disclose is not abrogated merely because the wife is represented by counsel of her own choosing or by the fact that the wife may be suspicious of the husband. Troxler v. Troxler, 255 So.2d 240 (La.App. 1st Cir.1971).
In cases for misrepresentation by the head and master of the community, the burden of proof is no different from the burden in other fraud cases; the plaintiff must prove her case by a preponderance of the evidence. Due' v. Due', supra. However, when, as in the instant case, the plaintiff presents a prima facie case to establish that the husband kept information from her and prevented her from receiving a "true, honest, and full picture of the community," the burden should shift to the husband to show that the omitted information was not material.
Mr. Theriot did introduce evidence in an attempt to prove that the net result of the partition was a financial benefit, not a detriment, to his former wife. However, the jury chose to believe otherwise. As recited by the trial judge, the proof presented by both sides was conflicting, and the conflict bars the trial court and now bars this court from disturbing the verdict.[1] See Stobart v. State, 604 So.2d 955 (1993). Accordingly, the trial court did not err in denying the defendant a judgment notwithstanding the verdict.
Another complaint of the defendant made both at the trial court level and on appeal concerns the plaintiff's use of financial statements prepared by the defendant around the time of the dissolution of the marriage. The defendant argues that the jury should have been charged that the financial statements were "weak" evidence according to the holding in Due' v. Due', supra. We think that the holding in that case is clear: the introduction of financial statements for the purpose of attaching a dollar value to the community goes to the weight of the evidence, not its admissibility. Consequently, it was not error for the trial court to deny a charge on the weight of the evidence as requested by the defendant. Again the trial court astutely handled the question of the financial statements in ruling on the post-trial motions of defendant, as follows:
The issue of the use of financial statements. The jury heard a tremendous amount of evidence, on that particular point. I think the evidence was clear.... I'm sure it was clear to them that the financial statements were not to be always considered ... for what they said. There was [sic] statements from Mr. Theriot's ... certified public accountant, that substantiated that. I think there was also evidence from someone in the banking profession that attested to that. But the financial statements were not the only piece of evidence.... There were many pieces of evidence submitted. I think it would be a risky thing for me or anyone else to conclude, that the jury's verdict in this case was based on the financial statements submitted by *263 Mr. Theriot (to various banking institutions). A simplistic approach would be to say if it had been, then it should have been three or four times higher than it was, because the financial statements if the jury had believed them, at face value, would have led them to grant a much higher award than they did.
Defendant also argues that the trial court erred in denying him post-trial relief because despite the jury's conclusion that fraud was committed, the plaintiff misled and confused the jury into making an award of $292,000 when she should have received zero.
In response to the complaint about the amount of damages, we are bound by the rule that before we, as an appellate court, can disturb an award made by a jury, we must determine from the record that the jury abused the "much discretion" accorded it in making damage awards. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The record in the instant case does not reveal abuse of discretion. In denying the defendant's motion for a new trial on the grounds that the jury's award of damages was contrary to the law and the evidence, the trial court noted that the defendant's own expert testified concerning the value of the defendant's corporations. The testimony included the expert's own evaluation of the corporations, and it was several hundred thousand dollars more than the defendant had disclosed.[2] The trial judge explained,
But, of course, that was just one asset, or one group of assets. There were other matters that the jury was required to take into consideration: the assumption of debt, what value that had, what values did the immovable property have. They had to evaluate whether the cash listed on the financial statements was in fact Nacis Theriot's money or whether it was somebody else's money. So there was substantial evidence.
Next, the defendant reiterates his objection to the trial court's failure to charge the jury on transaction or compromise. Defendant had timely requested the following:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent in the manner which they agree on, and which everyone of them prefer to the hope of gaining, balanced by the danger of losing. This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceedings. Contract of compromise need not be in any particular form, but mutuality of intent and consent to contract is required.
The record shows that the defendant objected to the court's refusal of the charge. In response to the objection, the court stated:
On the issue of compromise, the law is very clear in the jurisprudence that voluntary partitions should be treated like all other contracts and that they are subject to being set aside for violence, fraud, or error. And, although the community property settlement is called a settlement agreement, and traditionally it's entered into as a result of agreements made, it... was more particularly in truth and in fact in 1978 a voluntary partition, which according to the cases in [sic] the Civil Code should be treated as such. So, I have declined to give a particular instruction about compromise because it's my understanding that it's supposed to be treated like any other voluntary partition agreement.
*264 We agree with the trial court that the jurisprudence at the time when the husband was the head and master of the community envisions a voluntary partition agreement for the "settlement" of the community instead of "compromise" of a lawsuit. Indeed, a contrary view, with emphasis on the "hope of gaining" and the "danger of losing," would be inconsistent with the duty of the husband to render a "full disclosure." See Pitre v. Pitre, supra. Accordingly, the requested charge would have tended to confuse rather than to instruct the jury on the legal principles involved in the instant case. It was not error for the trial court to refuse the charge on compromise.
Finally, the defendant assigns as error the trial court's judgment ordering the payment of interest from March 3, 1978, the date of the community property settlement, instead of from the date of judicial demand in the instant suit. We find defendant's argument on this point to be without merit.
All debts bear interest at the legal rate from the time they are due, and an obligation to transfer to a former spouse her share of the community is due and payable when the community is dissolved. Hodson v. Hodson, 292 So.2d 831 (La.App. 2d Cir.), writ refused, 295 So.2d 177 (La.1974). Although the instant case is an action for fraud, the obligation to pay damages stems from the former obligation to transfer to the spouse her share of the community. Consequently, it is only logical that interest on the amount of damages should run from the date of the community property settlement, March 3, 1978, the date of reliance on Mr. Theriot's misrepresentations concerning the true value of the community assets.

ATTORNEY FEES
Finally, we consider the matter of attorney fees, an issue recited in the answer to the appeal filed by Peggy Theriot. In her brief plaintiff claims that on September 5, 1991, the trial court "erroneously" vacated the attorney fee award when it rendered judgment on defendant's motion for new trial. Plaintiff maintains that the $40,000.00 jury award for attorney fees should be reinstated with legal interest from July 12, 1991. Plaintiff also seeks to be awarded additional attorney fees for services rendered by plaintiff's counsel concerning post-judgment motions and appellate proceedings.
Before the instant case went to the jury, the jury was instructed as follows:
In this matter, should you find that Nacis Theriot has committed a fraud against Peggy Theriot, the law allows, in addition to the recovery of damages, an award of reasonable attorney fees.
In determining reasonable attorney's fees, you may consider factors other than the time the attorney visibly employed in this matter. You may consider the importance and results of this proceeding, the difficulties of the case, the degree of professional skill and ability required and exercised, the skill and experience of the attorney, and the importance of the litigation to the parties involved.
The above instruction obviously is based on the current version of LSA C.C. art. 1958 which provides: "The party against whom rescission is granted because of fraud is liable for damages and attorney fees." However, the article was not enacted until 1984, and it did not become effective until January 1, 1985.
Because the provision for attorney fees is a substantive right, the amended article is to be applied prospectively, to cases of fraud that occurred subsequent to the amendment. The retroactive application of the provision of Article 1958 for attorney fees by the jury in the instant case was contrary to the law in that the fraud occurred at the time of the community property settlement. There were no acts of Nacis Theriot that could be deemed fraudulent subsequent to the settlement. For these reasons, the verdict of the jury awarding Peggy Theriot attorney fees was contrary to the law and the evidence.
When Nacis Theriot filed a motion for a new trial, the trial judge recognized that the verdict for attorney fees was contrary to the law and the evidence. Pursuant to the mandatory provision of LSA-C.C.P. art. *265 1972[3] the trial judge granted a partial new trial and vacated the jury verdict for attorney fees. If a trial judge feels that a jury verdict is contrary to the law and the evidence, he must grant the proper motion for a new trial; the proper remedy is not to "save" the issue for appeal. See Kaplan v. Missouri-Pacific R. Co., 409 So.2d 298 (La.App. 3d Cir.1981).
Because the issue before us is whether or not the trial court erred in granting defendant's motion for a new trial on the attorney fees portion of the verdict, we need not discuss the defendant's failure to object to either the instruction or the interrogatory provided to the jury.
Likewise, because plaintiff was not entitled by law to attorney fees on her main demand, we decline to award the additional attorney fees sought in appellee's answer to this appeal.
Accordingly, we affirm the judgment of the trial court in its entirety, including the portion of the judgment vacating the jury award for attorney fees. We assess costs of this appeal against the defendant.
AFFIRMED.
NOTES
[1] In denying defendant's motion for judgment notwithstanding the verdict, the trial court stated: "I think there was substantial evidence, much evidence on both sides of the case, that had quality and weight that reasonable people certainly could disagree about. Including the evidence presented by the plaintiff on the issue of the financial statements(;) including the evidence presented by the defendant, on the value of the assumption of debt by Nacis Theriot, including the evidence that came out on cross examination ... from the defendant's own certified public accountant, attesting to what he thought the value of the defendant's corporations were on the date of the settlement. His own testimony included I think an evaluation of what he thought the value of those corporations were, and it was several hundred thousand dollars more than the defendant had disclosed.... Based on the law and what the standard is for me, I must deny the motion. For me to do otherwise would be for me to substitute my judgment of these facts for that of the jury....
[2] Testimony was adduced at trial concerning six corporations: Theriot Offshore Boats, Inc.; Theriot Bros. Marine Service, Inc.; Theriot & Associates, Inc.; Theriot Brothers, Inc.; Theriot Offshore Marine, Inc.; and Theriot & Theriot, Inc. In the "recapitulation" furnished by Mr. Theriot to his wife at the time of the community property settlement, Mr. Theriot set the total value of the corporations at $17,498. At trial the plaintiff's expert testified to a total value of $531,009, and the defendant's expert testified to a total value of $306,995. Thus, the jury had evidence before it concerning the value of the corporations to support a conclusion that the amount of the misrepresentation was from $289,497 to $513,511.
[3] LSA-C.C.P. art. 1972 provides in pertinent part:

A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.